JAMES v. LEWIS.

(Supreme Court, Appellate Division, Third Department. March 2, 1898.)

BOUNDARIES—ASCERTAINMENT—CONSTRUCTION OF DEEDS.

A deed described a division line as commencing at a point on the highway adjoining the land on the east 61 feet south of the grantor's house, and running thence "northwesterly, as the stone wall now runs, 82 feet, to a point in the wall, and thence westerly." By another deed the grantor deeded a triangular piece, describing it as bounded on the south by the stone wall, on the east by the highway, and on the north by a line drawn from an iron pin on the highway, 48½ feet south of the house, through another pin westerly thereof, which line intersected the wall 82 feet from the highway. The grantee in exchange deeded a triangular piece described as beginning at an iron pin 8½ feet south of his grantor's barn, thence northeasterly 40 feet to the stone wall, and 14 feet east from the same pin to the wall. Making the iron pin mentioned in the last deed identical with the second one in the second deed would harmonize the description, but otherwise if, as claimed by one party, there was another pin further south. No other pin was found, and

the evidence as to the location of the barn was entirely the memory of witnesses, who differed greatly. The wall had been removed. *Held* that, giving effect to the descriptions in the deeds, the wall commenced at a point 12½ feet south of the pin in the highway, and ran northwesterly a distance of 82 feet, thence westerly, and the division line established was not changed by the grantee's deed describing his part as 200 feet deep, although a straight line from the iron pin in the highway through the other pin would be 200 feet, while a line following such division line would be 208 feet.

Appeal from judgment on report of referee.

Ejectment by Ellen James against Isabella Lewis. From a judgment for defendant, plaintiff appeals. Reversed.

Patrick Roach was the owner of a few acres of land in the town of Granville. It was bounded on the east by a highway. On May 2, 1862, he conveyed a portion of these lands to Daniel I. Day, and retained the balance of them. The portion which he conveyed lay next south of that which he retained, and the question in dispute is where the division line between them should be located. By subsequent conveyances the part that Roach retained has been conveyed to the defendant in this action, and the part which he conveyed to Day is now owned by the plaintiff. The plaintiff claims that such division line should be located further north than the line down to which the defendant claims and is now occupying. Plaintiff brings ejectment, and the referee orders judgment for the defendant. From such judgment, plaintiff brings this appeal.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Thomas & Everts, for appellant.

J. B. McCormick, for respondent.

PARKER, P. J. The line in dispute is the north line of the plaintiff's premises and the south line of the defendant's, being the division line between them, and, wherever it is, it runs from the highway in a westerly or northwesterly direction about 200 feet. In the deed this division line is described as commencing at a point on the west side of the highway, 61 feet south from the southeast corner of Roach's dwelling house, and running thence "in a northwesterly direction, as the stone wall now runs, eighty-two feet, to a point in the stone wall on the south side of the garden of the party of the first part; thence westerly to a point half way in said wall from each end of the same; thence westerly in a straight line to the Rutland & Washington Railroad"; and thence on around to the highway and place of beginning. The stone wall is gone, and, as no course whatever is given for such line except "northwesterly" and "westerly," it is evident that trouble arises in attempting to locate the line from the deed alone. The referee has found that such division line was one commencing at a point in the west line of the highway where an iron pin is now placed, and running thence north, 85 deg. west, through another iron pin set in a ledge of rocks some 48 feet from the highway, straight across the premises to the northwest corner mentioned in such deed. If such was the course and starting point of such division line, the plaintiff and her grantors never had any title to the lands she claims, and judgment against her was properly ordered. But, in my opinion, this finding cannot be sustained by the evidence in this case. The next year, by a deed dated July 18, 1863, Roach conveyed to Day a further piece of land, being a small triangle, containing about 224 square feet. The description in

that deed starts from a point in the west line of the highway 48½ feet south of Roach's dwelling house, which would bring it 12½ feet north of the starting point of the division line or stone wall referred to in the deed of 1862, because that line started at a point in the west line of the highway 61 feet south of such dwelling house. It is also stated in such second deed that at such point of 48½ feet there is an iron pin set in the rock. This pin is the only one in the line of the highway, and is the one to which the referee refers. It is not claimed that there was ever any iron pin 61 feet from Roach's house, and hence that iron pin could not be the starting point of the division line referred to in the deed of 1862. Another iron pin was set in the ledge some 48 feet westerly of this pin, as above stated, and it seems very clear from the evidence that these iron pins were put there by Roach and Day when this triangle was laid out in July, 1863. The deed then proceeds to lay off the triangle by drawing a line from this pin on the highway on a course which would carry it through the other pin, being north, 85 deg. west, a distance of 32 feet, where, as the deed states, it strikes the stone wall which is between the lands of the parties thereto. Thus the triangle is formed between the stone wall on the south, the line 32 feet long on the north, and the highway on the east. If the finding of the referee is correct, this stone wall or division line would have to be upon the line between the two pins, and the triangle would have to be laid off above it. But the deed distinctly places the north side of the triangle on the line between the two pins, and the southerly side is placed on the stone wall, one end of which is 12½ feet further south. The stone in this wall were reserved by Roach, and taken away by him. The land lying northerly of such wall then, for the first time, became Day's. If the referee were correct, the land described in that triangle would have been conveyed to Day by his former deed of May 2, 1862. This deed also enables us to tell to a certainty the course which the stone wall followed for some distance, at least, from its starting point. It took such a course northwesterly that a line drawn through the iron pins would intersect it at a point 32 feet from the highway. The survey shows that course to be north, 63 deg. 45 min. west, and the distance to be about 36 feet. Here, then, we see that for this distance, at least, the referee is in error, both as to the starting point and as to the course which this division line run. Instead of starting at the pin, it started 12½ feet further south, and instead of running north, 85 deg. west, it run north, 63 deg. 45 min. west. The description of this division line in the deed of May 2, 1862, starts at the point in the highway, and takes it thence northwesterly, as the stone wall runs, 82 feet, to a point in the wall on the south side of the garden, thence westerly, etc. The plaintiff claims that such wall continued on in the same course, substantially, the full distance of 82 feet, and then turned westerly, and ran to the northwest corner. If it did, it undoubtedly included all the land that the plaintiff claims, and she has shown a good paper title to it.

From the language of the description there is a strong presumption that the wall made no material change to the west until it reached the point 82 feet distant. It is possible, of course, that it may have turned westerly at the point where it intersected the line of the two pins, and

then followed a course north, 85 deg. west. But it seems hardly prob-able that, if it had made so radical a change to almost due west at a dis-tance of only 36 feet from the starting point, it would have been de-scribed as turning westerly at a distance of 82 feet, and particularly if, after making such a turn at that distance, it ran on a continuous straight line across the whole lot. There is much evidence on both sides as to where that stone wall ran at points west of the intersection referred to. Such point of intersection was just east of a ledge of rocks, and the great bulk of evidence is directed to showing where the old wall was west of that ledge. But on this question as to where the stone wall ran after it passed the point of intersection, and west of the ledge, there is another conveyance that throws considerable light upon it. On July 18, 1863, in exchange for the triangle above referred to, Day reconveyed to Roach a small triangular piece of land next south of the division line between them. It is described in that deed as beginning at an iron pin in the rock 8½ feet south from Roach's barn; "thence in a north-westerly direction 40 feet in a straight line until it strikes the stone wall" between the parties; then commencing at said iron pin again, and "running east 14 feet" to the said wall. From this description it is manifest that the stone wall between the parties is the north side of the triangle, opposite the apex, and that the apex is at the iron pin. Now, if that apex can be correctly located on the ground, it will be easy to locate where the line of the stone wall run west of the ledge. The de-fendant claims that this iron pin is not the one which was set in the ledge. She claims that it is another one, set about 8 feet south of that one. If that is correct, then the side opposite the apex, viz. the stone wall, could be on the line running through the other two pins, as the referee has found it to be. But can the apex be located at that point, and make the sides of the triangle consistent with the description above given? It seems not. A line drawn from the apex east 14 feet would not strike the stone wall at all. It requires, as appears from defend-ant's own map, a line to run north, 58 deg. east, in order to strike the wall at that distance. There is another very significant feature to be considered in this connection, and that is that no witness, so far as I can discover, has ever seen an iron pin at that point. Roach, who helped lay out this triangle, knows nothing of such a pin. He frankly says he has no recollection of any pin there, and the only ones he speaks of are the two above mentioned. The plaintiff claims that the pin men-tioned in this deed of the second triangle is the one set in the ledge. And such a location will harmonize the sides of this triangle with the description given in the deed. Placing the apex at the iron pin in the ledge, and a line drawn substantially east will strike the stone wall at a distance of 14 feet. Such line is the line drawn through the two iron pins, and it strikes the stone wall, of course, at the place where that line was made to intersect it by the other deed. Thus the ends of these two triangles corner at that point of intersection, and it is manifest that this stone wall, instead of turning there, and running westerly along the side of this new triangle, continues on its course, and runs so that a line drawn from the apex and in a northwesterly direction may strike it and form a triangle north of the pin. The evidence which has con-trolled the referee in this particular seems to have been the recollection

of witnesses that the barn stood as far south as the iron pin in the ledge, and that the stone wall ran off from the corner of the barn in a straight course to the railroad. There is a very great difference in the memory of the witnesses upon these naked facts. Roach seems to have remembered the barn as being as far south as the pin in the ledge; and, if it depended upon memory alone, I should not be disposed to interfere with the referee's conclusion. But it is clear that he is in error concerning the point from, and the course on, which the division line between the parties originally started. The probabilities are also very strong that the iron pin which is still found in the ledge is the one referred to in the deed describing the second triangle. At that point it fits in with the description given; at the other point it does not fit at all. At that point an iron pin is known to have existed, put there for the purpose of surveying the triangles which were then exchanged; at the other point no one has ever seen a pin, and the only proof of it is a supposition that it was there, and is now covered up. And yet, if the apex of this triangle was at the point where plaintiff claims it to have been, there can be no doubt but that the division line in the deed of 1862 ran for the full distance of 82 feet on the course upon which it undoubtedly started. The evidence upon the subject of just where that barn stood is too voluminous to discuss it in detail, but I cannot but conclude that the referee has failed to give to the descriptions in the conveyances referred to the force to which they are entitled, and that hence they have not had their proper weight in determining the question at issue. I am, of course, aware that the original division line may have run as the plaintiff claims it did, and yet defendant have acquired a title to the strip in dispute by adverse user. But I do not understand the referee to put his decision upon any such ground. He does not specifically find to that effect; nor do I think the evidence in the case will substantiate that claim, if it be conceded that the stone wall, at the time of the conveyance in May, 1862, ran the whole length of 82 feet upon the course on which it started. Unless the stone wall, as a matter of fact, ran as far south as the iron pin in the ledge, there is not much evidence to sustain the claim that the land was ever for a period of 20 continuous years occupied by defendant as far south as the line which the referee finds. So, also, there is no evidence of any change in such line made by Roach and Day by deed, location, or otherwise, that would be operative against either, except so far as it was changed by the exchange of triangles above described.

The defendant claims that, wherever the original division line between Roach and Day may have been, the conveyance to the plaintiff from Daniel I. Day gives as her northern boundary the straight line running through the two iron pins, as found by the referee, and that hence she can claim nothing to the north of it. Such deed substantially described the premises conveyed as a parcel of land 80 feet in width on the highway, 100 feet in width in the rear or west end, and 200 feet long or deep from the west side of the highway. From this defendant argues that because a straight line drawn as the referee finds is 200 feet long, and a line following the old division line bends out to the northward so as to make it some 208 feet in all, therefore plaintiff must follow the straight line, and treat all the land between it

and the old division line as still owned by Day. But Day's deed does not attempt to describe the line. It describes the lot as being 200 feet in depth. In addition to that, it says that the piece conveyed is taken out of the northeast corner of his lot. Clearly that description conveys all that Day owns in that corner, and carries the land conveyed up to his north line.

The value of the land claimed in this case is said to be $10, and the parties have already enjoyed a sharply contested trial over it. It is to be regretted that one trial cannot be made to close the controversy. But, inasmuch as I am satisfied that the referee has misconceived the force of the conveyances above referred to, I am not at liberty to disregard the error and evade granting another.

The judgment must be reversed, the referee discharged, and a new trial granted; costs to abide the event. All concur.